In the Matter of JESSE ZASLAV, an Attorney, Respondent. ASSOCIATION OF THE BAR OF THE CITY OF NEW YORK, Petitioner.

First Department, June 4, 1964.

*John G. Bonomi* of counsel (*Michael Franck* with him on the brief), for petitioner.

*Edward V. Morand* for respondent.

*Per Curiam.* Respondent was admitted to the practice of law in this Department on June 29, 1953. In this disciplinary proceeding he has confessed to two charges of professional misconduct contained in the petition of the Association of the Bar of the City of New York verified July 12, 1963. The first charged him with ignoring approximately 111 summonses issued for traffic violations and the second charged false testimony before petitioner's Committee on Grievances with respect to 86 of them.

From 1957 to 1962 respondent ignored about 110 summonses issued for traffic violations. He responded to about 24 only after receipt of monitory '' citations '', paying $195 in fines as to about 23 and being found not guilty as to one. Later, on October 30, 1962, he pleaded guilty to 86 summonses then overdue and outstanding and was fined $1,225, which he paid.

On January 15, 1963, respondent falsely testified, under oath before petitioner's Committee on Grievances, that he was unaware until August, 1962 of the issuance of any of the 86 summonses. The petition including the charges on the traffic

violations and false testimony was served on respondent on July 17, 1963. On September 25, 1963 he advised petitioner's committee through his attorney that he wished to reappear before the committee to recant his testimony. Since the petition had already been served, his rehearing request was denied, but he was told that he could recant in an affidavit which would be submitted to this court along with the petition. This he did by affidavit sworn to October 21, 1963. This court ordered a reference to inquire into the circumstances.

Before the Referee, respondent stated in mitigation that he did not pay some of the fines because of lack of funds and because he thought the practice of ignoring traffic summonses did not involve a serious infraction of the law. As to the more serious charge of false testimony the Referee notes the following testimony of respondent:

"When I did go down to the Bar Association, I intended to tell the truth that day. For a number of reasons, a lot of the questions I misunderstood. I went down there without counsel, and in addition to that I am diabetic, although I am well-controlled.

"At the time I went down there, I took insulin in the morning and I did not eat in the afternoon. When I took the stand, of course, I went into a state of shock and panic, more or less, and, in addition to all of these other things I had just gotten engaged and I recently have gotten married, last April."

Respondent submitted the affidavit of a doctor concerning the diabetic condition and failure to have his customary meal after taking insulin. The report of the Referee expresses neither belief nor disbelief in these explanations. It condemns the many traffic violations, ignoring of many summonses, and false testimony, but concludes:

"However, the voluntary confession of the respondent with reference to these charges shows a sincere effort on his part to make amends for his derelictions. I am sure this experience is one which he will never forget.

"I am satisfied after seeing and hearing the respondent that he is fully aware of the gravity of the situation and that he is genuinely repentant."

The brief of petitioner, after noting the circumstances, including the recantation, similarly concludes: "[T]he Referee has found * * * that respondent is genuinely repentant. We respectfully submit that this Court should consider this factor in determining the measure of discipline to be imposed."

The disregard of the law and its processes evinced by petitioner is despicable. It makes little difference whether the ignoring of the multitude of traffic summonses was due to disrespect for the law or lack of understanding; both should be equally unacceptable in a member of the Bar (cf. *Matter of Sanders*, 6 A D 2d 87). But, serious as that is, its significance is not nearly as great as the false testimony. Petitioner's committee occupies a special status in the investigation and prosecution of disciplinary matters (see, e.g., *Matter of Anonymous No. 1*, 13 N Y 2d 654; *Matter of Tuck*, 180 App. Div. 924; *Matter of Branch*, 178 App. Div. 585). It may obtain subpoenas to compel testimony, and it may take testimony under oath (Rules of the Supreme Court, Appellate Division, First Department, part 4, rule XII). False testimony before the committee warrants disciplinary action (see *Matter of O'Doherty*, 14 A D 2d 4, 9, mot. for rearg. and mot. for lv. to app. den. 14 A D 2d 848, app. dsmd. in part 11 N Y 2d 767, affd. 11 N Y 2d 1028; *Matter of Branch, supra*).

However, factors in mitigation should be carefully weighed. The primary concern is not punishment, but protection of the public from inadequate practitioners and preservation of the reputation of the Bar. It is significant that respondent's misconduct was unrelated to his practice or relations to clients. (See, e.g., *Matter of Rotwein*, 20 A D 2d 428.) Respondent's heretofore untarnished record is to be considered. His recantation and frank admission of guilt before the reference for hearings are an ameliorating factor entitled to great weight. (E.g., *Matter of Rotwein, supra*; *Matter of Queens County Bar Assn. [Brownstein]*, 253 App. Div. 840; *Matter of Westchester County Bar Assn. [Freeman]*, 243 App. Div. 621; *Matter of Goldman*, 241 App. Div. 349; *Matter of Blakesberg*, 236 App. Div. 227, 228; *Matter of Branch, supra*, p. 589.)

Under the circumstances, and in view of respondent's genuine repentance, a suspension is an adequate sanction (see *Matter of Sanders, supra*).

Accordingly, the report of the Referee should be confirmed and respondent should be suspended for six months.

BREITEL, J. P., VALENTE, STEVENS, EAGER and STEUER, JJ., concur.

Respondent suspended for a period of six months.